IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KSENIIA PETROVA | No. 1:25-cr-10272-LTS |

**DEFENDANT KSENIIA PETROVA'S RESPONSE TO GOVERNMENT'S OBJECTIONS [D.E. 63] TO MAGISTRATE JUDGE'S ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL DISCOVERY [D.E. 55]**

"Therein is the most dangerous power of the prosecutor: that he will pick people that he thinks he should get, rather than pick cases that need to be prosecuted."

—Attorney General Robert H. Jackson, *The Federal Prosecutor* (1940).

"What the Government has chosen not to address is as telling as what it has."

—*United States v. Kilmar Abrego Garcia*, No. 3:25-cr-00115, 2026 U.S. Dist. LEXIS 113887, at *46 (M.D. Tenn. May 22, 2026) (dismissing indictment due to vindictive prosecution).

William W. Fick (BBO #650562)
Daniel N. Marx (BBO #674523)
Amy Barsky (BBO #601111)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA  02110
(857) 321-8360
*wfick@fickmarx.com*
*dmarx@fickmarx.com*
*abarsky@fickmarx.com*

Dated:   June 1, 2026

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .........................................................................................................iii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ...................................................................**Error! Bookmark not defined.**

    A.    The Habeas Proceedings, No. 25-cv-00240 (D. Vt.) .............................................. 2

    B.    Congress Writes to DHS and ICE, DHS Attacks "Fake News" for "Spreading "Disinformation" About Ms. Petrova and Others, and the U.S. Attorney Attacks the *New York Times*……………………………………………………3

    C.    Discovery Litigation before the Magistrate Judge ................................................. 4

    D.    Context: The Trump Administration's Litigation Against Harvard, *see* Nos. 25-cv-11048-ADB, 25-cv-10910-ADB, and 25-cv-11472-ADB (D. Mass.) .............. 4

    E.    The Habeas Court Grants Summary Judgment and the District of Massachusetts Grants Mandamus Relief in Petrova v. Blanche, No. 26-cv-11825-WGY (D. Mass.). ................................................................................................................. 5

ARGUMENT ........................................................................................................................... 5

    I.    THE MAGISTRATE JUDGE CORRECTLY FOUND "MORE THAN 'SOME EVIDENCE'" OF VINDICTIVE ENFORCEMENT AND PROSECUTION. ................. 6

    A.    Relevant Law ......................................................................................................... 6

    B.    The Magistrate Judge did not err, let alone clearly err, in finding "some evidence" of vindictiveness warranting discovery. ................................................ 7

    II.    THE MAGISTRATE JUDGE CORRECTLY FOUND SUFFICIENT EVIDENCE OF SELECTIVE ENFORCEMENT AND PROSECUTION TO WARRANT DISCOVERY. ……………………………………………………………………14

    A.    Relevant law.......................................................................................................... 14

    B.    The Magistrate Judge did not err, let alone clearly err, in finding "some evidence" of unconstitutional selectivity. .............................................................. 15

    C.    The Court should afford the government no presumption of regularity............... 18

    III.    THE PRODUCTION OF THE INSTRUCTIONS TO THE GRAND JURY ON THE SMUGGLING CHARGE IS WARRANTED. ................................................................ 19

CONCLUSION....................................................................**Error! Bookmark not defined.**

CERTIFICATE OF SERVICE .............................................................................................. 21

## TABLE OF AUTHORITIES

**Cases**

*Armstrong v. United States*, 517 U.S. 456 (1996)……………………………………....………..14

*Blackledge v. Perry*, 417 U.S. 21 (1974)……………………………………....……….6

*Bordenkircher v. Hayes,* 434 U.S. 357 (1978)…………………………………………...…..6

*Cartagena v. Soto*, No. 3:26-cv-01455-ZNQ (D.N.J. Feb. 26, 2026)……………………………18

*Fed. Educ. Assoc. et al. v. Trump*, No. 25-cv-013620-PLF (D.D.C. Aug.14, 2025)………….….18

*Ganger v. Peyton,* 379 F.2d 709 (4th Cir. 1967)………………………………………….……13

*Guevara Peruano v. Wesling et al.,* No. 26-cv-10300 (D. Mass.) (D. Mass. May 20, 2026)…....13

*In re Grand Jury Proceedings*, 813 F. Supp. 1451 (D. Colo. 1993)………………..…………20

*In re: Search of One Device,* No. 25-sw-82-ZMF (D.D.C. May 9, 2025)………………….…18

*Oyler v. Boles,* 368 U.S. 488 (1962)………………………………………….………..14

*Petrova v. U.S. Dep't Homeland Security et al.*, No. 25-cv-00240  (D. Vt.)…………….…passim

*Petrova v. Blanche et al.*, No. 26-cv-11825-WGY (D. Mass.)..............................................2, 4, 5

*Pres. and Fellows of Harvard Coll. v. Dep't of Homeland Security et al.*, No. 25-cv-11472-ADB (D. Mass. June 23, 2025)…………………………………………………………………..4, 18

*Jones v. Richards*, 776 F.2d 1244 (4th Cir. 1985)…………………………………………..13

*North Carolina v. Pearce*, 395 U.S. 71 (1969)……………………………………………6

*Singh v. Tsoukaris*, No. 26-cv-01531-CPO (D.N.J. Feb. 20, 2026)……………………….…18

*United States v. Adams*, 870 F.2d 1140 (6th Cir. 1989)…………………………...……7, 8, 9

*United States v. Alter,* 482 F.2d 1016 (9th Cir. 1973)………………………………….…..19

*United States v. Andrews*, 633 F.2d 449 (6th Cir. 1980)…………………………………7, 13

*United States v. Belton*, No. 14-cr-00030-JST, 2015 U.S. Dist. LEXIS 52426 (N.D. Cal. Apr. 21, 2015)……… …………………………………………………..20

*United States v. Bucci*, 582 F.3d 108 (1st Cir. 2009)………………………………...7, 8

*United States v. Carey,* 816 F. Supp. 3d 129, 144 (D.D.C. 2026)……………………...…12, 15

*United States v. Comey*, No. 25-cr-00272-MSN-WEF (E.D. Va.)…………………………14

*United States v. Davis*, 793 F.3d 712 (7th Cir. 2015)………………………………….....15

*United States v. Dwyer*, 287 F. Supp. 2d 82 (D. Mass. 2003)…………………………..9

*United States v. Facteau*, No. 1:15-cr-10076-ADB, 2016 U.S. Dist. LEXIS 111595 (D. Mass. Aug. 22, 2016)……………………………………………………..………19, 20

*United States v. Fuentes*, 2008 U.S. Dist. LEXIS 50425 (E.D. Cal. June 24, 2008)…………….20

*United States v. Gallegos-Curiel*, 681 F.2d 1164 (9th Cir. 1982)………………………….….13

*United States v. Garcia*, 802 F. Supp. 3d 1055 (M.D. Tenn. 2025)……………………………6, 7

*United States v. Garcia*, 807 F. Supp. 3d 827 (M.D. Tenn. 2025)…………………………..….8

*United States v. Garcia*, No. 3:25-cr-00115, 2026 U.S. Dist. LEXIS 113887 (M.D. Tenn. May 22, 2026)……………………………………………………………..8, 9

*United States v. Gurry*, No. 16-cr-10343-ADB, 2019 U.S. Dist. LEXIS 8212 (D. Mass. Jan. 17, 2019)……………………………………………………………….20

*United States v. Heidecke,* 900 F.2d 1155 (7th Cir. 1990)……………………...……………….7

*United States v. Jenkins*, 537 F.3d 1 (1st Cir. 2008)……………………………………………6

*United States v. Johnson,* 171 F.3d 139 (2d Cir. 1999)……………………………………..13

*United States v. Lewis*, 517 F.3d 20 (1st Cir. 2008)…………………………………….…..16

*United States v. Monsoor,* 77 F.3d 1031 (7th Cir. 1996)……………………………………..9

*United States v. Mumphrey*, 193 F. Supp. 3d 1040, 1055 (N.D. Cal. 2016)……………..………15

*United States v. Oregon*, No. 6:25-cv-01666-MTK (D. Or. Feb. 5, 2026)………………….....18

*United States v. Poole*, 407 F.3d 767 (6th Cir. 2005)…………………………………….…..6

*United States v. Sanders*, 211 F.3d 711 (2d Cir. 2000)…………………………...…………..9

*United States v. Schmucker,* 815 F.2d 413 (6th Cir. 1987)…………………………………….15

*United States v. Sellers*, 906 F.3d 848 (9th Cir. 2018)………………………………………...15

*United States v. Tuitt,* 68 F. Supp. 2d 4 (D. Mass. 1999)……………………………………..14

*United States v. Velsicol Chem. Corp.*, 498 F. Supp. 1255 (D.D.C. 1980)………………………13

*United States v. Washington*, 869 F.3d 193 (3d Cir. 2017)…………………………………..14, 15

*United States v. Wilson*, 120 F. Supp. 2d 550 (E.D.N.C. 2000)…………………...……………9

*United States v. Yu*, 161 F.4th 25 (1st Cir. 2025)………………………………….…..7, 14, 15, 18

*United States v. Zakhari*, 85 F.4th 367 (6th Cir. 2023) …………………………………...6

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886)………………………………………………...……14

*Young v. United States ex rel. Vuitton.,* 481 U.S. 787 (1987)……………………...……….....13, 14

**<u>Regulations</u>**

19 C.F.R. § 148.11……………………………………………………………….………16

**<u>Other</u>**

Leah B. Foley, Statement, via "X" (Ex. B)………………………………………3, 12, 13, 18

Petrova, K. "I Came to Study Aging. Now I'm Trapped in ICE Detention." *New York Times* (May 13, 2025)……………………………………………………………………………….1

U.S. Dep't Homeland Security, "100 Days of Fighting Fake News" & related Tweets (Exs. D&E) ………………………………………………………………….5, 9, 12, 18

Wemple, E., "Trump's Media-Bashing Is Coming Back to Bite Him in Court," *N.Y. Times* (Apr. 2, 2026)…………………………………………………………………....…..13

"The 'Presumption of Regularity' in Trump Administration Litigation (4th edition)," *Just Security* (updated Mar. 19, 2026)……………………………………………………...19

**INTRODUCTION**

Kseniia Petrova, a 30-year-old Russian national and bioinformatics researcher at Harvard Medical School, returned to Logan Airport on February 16, 2025, after traveling in Europe. When U.S. Customs and Border Protection ("CBP") officials discovered scientific research samples in her luggage—comprised of inert (non-living), non-toxic, formalin-fixed embryonic frog cells—CBP unlawfully cancelled her visa, declared her inadmissible, and sent her into a months-long ordeal of cross-country transportation and detention. She filed a habeas petition in the District of Vermont (the "habeas court") against the Department of Homeland Security ("DHS") and other respondents. Her unlawful detention and related litigation attracted international media attention. *See, e.g.*, Petrova, K. "I Came to Study Aging. Now I'm Trapped in ICE Detention." *New York Times* (May 13, 2025). Months later, as she achieved incremental success in her habeas case and appeared likely to be released on bond, DHS headquarters ordered a criminal investigation. Federal prosecutors quickly brought criminal charges, transferred Ms. Petrova to U.S. Marshals custody, refused to agree to conditions of release until she had spent additional weeks in custodial transportation from Louisiana to this Court for a detention hearing, and then, shortly after her arrival in Massachusetts, offered to drop all criminal charges if she would abandon her habeas petition and self-deport (she declined).

The habeas court found that Ms. Petrova "plausibly alleges that the CBP officer acted contrary to applicable law and the statutory mandate of the INA[,] . . . that *her criminal proceedings were initiated for an improper purpose*, and that she was thereby deprived of . . . due process." *Petrova v. U.S. Dep't Homeland Security et al.*, No. 25-cv-00240, D.E. 95 at 43 (D. Vt. Sept. 26, 2025) (emphasis added) (Order on DHS's Motion to Dismiss; subsequent references to other habeas court docket entries are referenced as "D. Vt. D.E. ___").

In this case, Magistrate Judge Dein issued a thoughtful Order (D.E. 55; "Order") allowing limited discovery into whether the criminal investigation and prosecution of Ms. Petrova were

unconstitutionally vindictive and/or selective, and partial production of the government's instructions to the grand jury. As Judge Young noted in a related mandamus case, "I have read Magistrate Judge Dein's very careful decision, *there are very real questions about whether the criminal proceeding is selective or vindictive prosecution for the petitioner's exercise of her First Amendment rights*." *Petrova v. Blanche et al.*, No. 26-cv-11825-WGY (D. Mass.), Hr'g Tr. at 11 (Apr. 23, 2026) (emphasis added), attached as Ex. A. This Court should affirm the Order.

## BACKGROUND

Ms. Petrova's Motion to Compel summarizes the factual background in detail. *See* D.E. 45 at 2-7 ("Mot."); *see also* Order at 2-8. Here, Ms. Petrova highlights key facts and provides updates subsequent to the Order, but she otherwise incorporates the facts and arguments in her Motion.

### A.      The Habeas Proceedings, No. 25-cv-00240 (D. Vt.)

On February 23, 2025, Ms. Petrova filed a habeas petition in the District of Vermont, challenging CBP's conduct at the airport and her unlawful detention. In addition to fighting the case on the merits, respondents made three procedural moves attempting to scuttle the litigation.

First, the day after the petition was filed, DHS transferred Ms. Petrova from Vermont to a detention facility in Louisiana. *See* D.E. 45 at 4 (citing D. Vt. D.E. 63 at 2-3 and D.E. 95 at 80).

Second, although CBP initially maintained Ms. Petrova was subject to expedited removal, it put her into regular removal proceedings on March 7, 2025, arguing that mooted the habeas. *See* D. Vt. D.E. 63 at 5 ("Ms. Petrova's habeas challenge to her expedited removal proceedings … has been moot since March 7 and, because bail is unnecessary to dismiss a moot petition, there is no basis to grant Ms. Petrova's bail request.").

Third, as it became clear the habeas court was likely to order Ms. Petrova's release and rule against respondents, DHS headquarters ordered a criminal investigation on May 2, 2025 that resulted in charges just 10 days later. Judge Dein noted, "[t]he criminal complaint was presented to this Court on May 12, 2025, two days before the scheduled hearing before the habeas court,"

2

yet the "complaint affidavit makes no mention of the habeas proceedings." Order at 4. Once the U.S. Marshals took custody of Ms. Petrova, the government argued to the habeas court that "her petition is moot because she was arrested on May 14, 2025, for smuggling in violation of 18 U.S.C. § 545." D. Vt. D.E. 63 at 5 (emphasis added). The habeas court held Ms. Petrova plausibly alleged that "her criminal proceedings were initiated for an improper purpose." D. Vt. D.E. 95 at 43.

**B.    Congress Writes to DHS and ICE, DHS Attacks "Fake News" for "Spreading "Disinformation" About Ms. Petrova and Others, and the U.S. Attorney Attacks the *New York Times*.**

On April 29, 2025, members of Congress wrote to the heads of DHS and ICE expressing "deep concern" over Ms. Petrova's detention Ex. C. They noted, "[s]he has done nothing to risk our country's security," the "U.S. greatly benefits from [her] work," and "the penalty for improperly importing this non-toxic, non-hazardous frog material is a fine of up to $500, not detention or deportation." *Id*.

On April 30, 2025—two days before DHS Headquarters ordered the criminal investigation of Ms. Petrova—DHS published a "100 Days of Fighting Fake News" bulletin claiming, "DHS has been Holding the Media Accountable for Spreading Disinformation to the American People." Ex. D. It lists Ms. Petrova, along with Kilmar Abrego Garcia and others, as "Noteworthy Individuals Deported or Prevented from Entering the U.S," with a list of bullet points about her case. *Id*. at 4. In related Tweets on the same day, DHS lauded its "100 days of fighting the Fake News" and again featured Ms. Petrova, Abrego Garcia, and others, slamming *NBC News*'s coverage of Ms. Petrova and insisting that Ms. Petrova "knowingly broke the law and took deliberate steps to evade it." Ex. E.

On May 14, 2025, the United States Attorney for the District of Massachusetts posted a video announcing the charges on the social media platform "X," disparaging Ms. Petrova, falsely claiming she endangered the "health and safety of others," and attacking the *Times* for publishing her Op/Ed, calling it "lies." https://x.com/DMAnews1/status/1922765637815849015. *See* Ex. B.

3

### C.    Discovery Litigation before the Magistrate Judge

Ms. Petrova moved to compel discovery on December 19, 2025. *See* D.E. 45, 45-1 (defense requests). The government opposed. D.E. 47. Magistrate Judge Dein held a hearing on February 10, 2026. *See* D.E. 51 (Hr'g Tr.). On April 1, 2026, she issued a written Order allowing the motion "in connection with the defendant's contemplated claims of vindictive and selective criminal prosecution." D.E. 55 at 1 ("Order").  Specifically, Magistrate Judge Dein ordered the government to produce discovery in response to requests 16-21 and 27-29, as well as the grand jury instructions on the charge of smuggling. *See* Order at 8, 17. She further directed the parties to "meet and confer to determine whether they can agree as to the scope of specific discovery requests in light of the ruling." *Id*. The government then filed objections to the Order "in its entirety." D.E. 47 at 2.

### D.    Context: The Trump Administration's Litigation Against Harvard, *see* Nos. 25-cv-11048-ADB, 25-cv-10910-ADB, and 25-cv-11472-ADB (D. Mass.)

The government's actions against Ms. Petrova occur against the backdrop of the Trump Administration's attacks against universities—Harvard in particular—as well as its targeting of immigrants, international students, academics, and scientists. The Administration issued a "Proclamation" barring the issuance of F-1 visas for any student "to pursue a course of study at Harvard University" and J-1 visas for "any alien . . . to participate in an exchange visitor program hosted by Harvard University." *Pres. and Fellows of Harvard Coll. v. Dep't of Homeland Security et al.*, No. 25-cv-11472-ADB (<u>D. Mass. </u>June 23, 2025), D.E. 75 at 12; *see* "Fact Sheet: President Donald J. Trump Restricts Foreign Student Visas at Harvard University," *The White House* (June 4, 2025). Judge Burroughs found this "unconstitutional course of retaliatory conduct directed at Harvard in response to its exercise of its First Amendment rights" comprises "unconstitutional viewpoint discrimination" and "violates Harvard's equal protection rights." *Id*. at 2; *see also* D.E. 45 at 14-15 & n.4 (discussing other lawsuits).

The Commonwealth of Massachusetts filed an amicus brief in Ms. Petrova's habeas case highlighting the Administration's "policy and practice of targeting international students and academics in Massachusetts for visa revocation and detention for nonexistent or minor offenses that are not grounds for inadmissibility." *See* D.E. 45 at 4 (quoting D. Vt. D.E. 43-1 at 3). Secretary of State Rubio himself confirmed the Administration's policy of targeting and "instantly revok[ing]" the visas of "foreign students. . . who abuse our hospitality." D.E. 45 at 4-5 (quoting D. Vt. D.E.  43-1 at 7); Order at 4-5 (discussing same).

### E.     The Habeas Court Grants Summary Judgment and the District of Massachusetts Grants Mandamus Relief in Petrova v. Blanche, No. 26-cv-11825-WGY (D. Mass.).

On April 7, 2026, the habeas court granted partial summary judgment to Ms. Petrova, vacating CBP's unlawful cancellation of her visa and declaration of inadmissibility and finding her detention was unlawful.  *See* D. Vt. D.E. 117 at 20.

On April 20, 2026, Ms. Petrova filed a Petition for a Writ of Mandamus, seeking an order compelling the Immigration Judge to recognize the habeas court's order. *See Petrova v. Blanche et al.*, No. 26-cv-11825-WGY (D. Mass.). On April 24, 2026, Judge Young granted mandamus relief, *id*. D.E. 12, making him the *third* federal judge to find the government has acted unlawfully and/or improperly in its treatment of Ms. Petrova. *See also* Ex. A (Judge Young: "I have read Magistrate Judge Dein's very careful decision, there are very real questions about whether the criminal proceeding is selective or vindictive prosecution for the petitioner's exercise of her First Amendment rights. Those are things that constitutionally concern this Court"); *id*. ("this case . . . is very similar to Abrego Garcia, out of the Middle District of Tennessee").

### ARGUMENT

Magistrate Judge Dein correctly found there is more than "some evidence" of

unconstitutional vindictiveness and selectivity to warrant discovery.[1]

## I.    THE MAGISTRATE JUDGE CORRECTLY FOUND "MORE THAN 'SOME EVIDENCE'" OF VINDICTIVE ENFORCEMENT AND PROSECUTION.

### A.    Relevant Law

"To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *North Carolina v. Pearce*, 395 U.S. 711, 738 (1969); *see Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional'"); *see also Blackledge v. Perry*, 417 U.S. 21 (1974). It is undisputed that Ms. Petrova's habeas petition qualifies as protected activity, *see* Order at 9, as did her *Times* Op/Ed.

A defendant can establish vindictive enforcement or prosecution by either (1) "producing evidence of actual vindictiveness" or (2) "demonstrating circumstances that reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness." *United States v. Jenkins*, 537 F.3d 1, 3 (1st Cir. 2008). If a defendant raises a presumption of vindictiveness, the government may rebut the presumption by showing objective reasons for its charges. *See id*. In evaluating the "likelihood of vindictiveness," courts weigh two factors: "(1) the prosecutor's 'stake' in preventing assertion of the protected right and (2) the reasonableness of the prosecutor's actions." *United States v. Garcia*, 802 F. Supp. 3d 1055, 1061 (M.D. Tenn. 2025) (quoting and relying on *United States v. Zakhari*, 85 F.4th 367, 379 (6th Cir. 2023), and *United States v. Poole*, 407 F.3d 767, 776 (6th Cir. 2005)). The Supreme Court has twice found a presumption of vindictiveness: once where the trial judge, on remand after a successful appeal, imposed a harsher sentence, *see Pearce*, 395 U.S. at 725; and once where the prosecutor reindicted on a more serious charge after a successful appeal. *See Perry,* 417 U.S. at 28. Actual vindictiveness may be shown based on the statements of

---

[1] Ms. Petrova agrees that this Court reviews questions of law *de novo* and findings of fact for clear error. *See* Obj. at 3.

Executive officials. *See Garcia*, 802 F. Supp. 3d at 1061; *United States v. Andrews*, 633 F.2d 449, 453 (6th Cir. 1980).

To gain *discovery* in support of a claim of vindictive *prosecution*, a defendant must show "some objective evidence tending to show the existence of prosecutorial vindictiveness." *United States v. Bucci*, 582 F.3d 108, 113 (1st Cir. 2009), which other courts have described as a "*prima facie* showing of a realistic likelihood of vindictiveness." *United States v. Adams*, 870 F.2d 1140, 1146 (6th Cir. 1989) ("'Some evidence' of vindictive prosecution has been presented here. It is hard to see, indeed, how the defendants could have gone much farther than they did without the benefit of discovery on the process through which this prosecution was initiated"). "Requiring the defendant to prove more than a colorable claim before compelling discovery might prematurely stifle a legitimate defense of vindictive prosecution for lack of evidence." *United States v. Heidecke,* 900 F.2d 1155, 1159 (7th Cir. 1990). A claim of vindictive *enforcement* is likely subject to a "lower standard" of proof. *See United States v. Yu*, 161 F.4th 25, 45 (1st Cir. 2025).

**B.    The Magistrate Judge did not err, let alone clearly err, in finding "some evidence" of vindictiveness warranting discovery.**

Judge Dein correctly found there "is more than 'some evidence'" to support discovery.

> [T]he evidence before this Court, which may, of course, be challenged by information produced in discovery, is that Ms. Petrova's actions at Logan would not normally have resulted in felony criminal charges. In addition to the evidence provided to the habeas court, the facts before this Court establish that the criminal investigation was not initiated by CBP or HSI Massachusetts. Moreover, the statements by the U.S. Attorney indicated that Ms. Petrova's status as a Harvard researcher was a factor in the decision to charge her with a felony. The Administration's efforts to discourage foreign students from attending Harvard and other private colleges and universities was widely reported in the media.

Order at 10. Judge Dein further found

> substantial evidence . . . that the criminal prosecution was initiated in response to Ms. Petrova's habeas petition, and to avoid the inquiry raised by the habeas petition – namely whether CBP's actions in summarily voiding a valid visa, without a hearing, due to conduct which would not normally rise to the level of a criminal prosecution, was an appropriate exercise of CBP's authority. There is evidence that the summary cancelation of visas was a goal of the Administration, as asserted in

the Commonwealth of Massachusetts' amicus brief. The Massachusetts U.S. Attorney in her public statement following the unsealing of the criminal complaint, referred to CBP's actions in summarily canceling Ms. Petrova's visa favorably. ("The U.S. visa that Ms. Petrova was given – which was revoked by customs officials, as a result of her conduct – is a privilege, not a right."). Nevertheless, Ms. Petrova put forth persuasive evidence before the habeas court that the steps taken by CBP in Ms. Petrova's case were problematic and did not even follow CBP's own rules. The stakes for the government in the challenge to CBP's authority was quite high.

Order at 10-11 (internal citations omitted).

### 1.      The government misconstrues the law.

The government faults Magistrate Judge Dein for failing to adhere to *Bucci*, 582 F.3d 108. *See* Obj. at 12-15. In the government's parsing, *Bucci* precludes any court from finding "some evidence" of vindictiveness unless the defendant produces direct evidence that *the local prosecutors themselves* harbored the vindictive animus. *See id*. That is incorrect as a matter of law. *See United States v. Garcia*, 807 F. Supp. 3d 827, 830 (M.D. Tenn. 2025) ("Cases do not magically appear on the desks of prosecutors. The motivations of the people who place the file on the prosecutor's desk are highly relevant when considering a motion to dismiss for vindictive prosecution") (citing *Adams*, 870 F.2d at 1146).

The government asks this Court to disregard the direct evidence of animus against Ms. Petrova by actors other than "the USAO." Obj. at 12 ("under *Bucci*, the 'stakes for the government' must mean the stakes of those making the challenged charging decision: the prosecutors"). *Bucci* does not endorse, much less require, such a myopic approach. *Cf., e.g.*, *Garcia*, 2026 U.S. Dist. LEXIS 113887, at *40 ("[t]he Government contends that McGuire alone made the decision to indict Abrego free of influence, pressure, or direction from Blanche, Main Justice, the White House, or DHS. This Court finds that the persuasive, credible, objective evidence shows otherwise"). *Bucci* simply upheld the denial of discovery, under a deferential appellate standard of review, where the defendant "*set forth no evidence* suggesting that [law enforcement's concern about Bucci's "Who's a Rat" website] ever affected the prosecutors making the specific charging

decisions in his case." 582 F.3d at 113 (emphasis added). Here, in contrast, there is substantial evidence connecting this USAO to DHS's improper conduct and "stake" in the habeas litigation. *See* § B.2 below; Exs. B, D, E.

In doing so, the government ignores the well-established body of law holding that a defendant can establish vindictive prosecution if an "agency in some way prevailed upon the prosecutor in making the decision to seek an indictment." *United States v. Monsoor*, 77 F.3d 1031, 1035 (7th Cir. 1996); *see also Adams*, 870 F.2d at 1146 ("if the EEOC was able to prevail upon the Department of Justice to institute a prosecution that would not have been undertaken but for Ms. Adams' exercise of her statutory right to sue, it does not seem to us that EEOC's motivation is irrelevant"); *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) (claim can arise if prosecutor "was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse'") (citations omitted); *United States v. Dwyer*, 287 F. Supp. 2d 82, 89 (D. Mass. 2003) (same) (citing *Sanders*); *Garcia*, 2026 U.S. Dist. LEXIS 113887, at *16-17 ( "Blanche's now unrebutted public statements tying the reopened investigation to Abrego's successful lawsuit taints the investigation with a vindictive motive"); *United States v. Wilson*, 120 F. Supp. 2d 550, 555 (E.D.N.C. 2000) (granting motion to dismiss vindictive prosecution where "the U.S. Attorney in South Carolina prevailed upon the U.S. Attorney in this district to bring the current charges against him"). Indeed, the government *concedes* that "the actions of the Massachusetts [USAO] should [not] be viewed in a vacuum." Obj. at 15 (quoting Order at 12). Judge Dein correctly found: "If HSI headquarters directed Massachusetts to open the investigation with a retaliatory purpose, the intervention of the Massachusetts U.S. Attorney's Office does not shield HSI's conduct from review." Order at 12, *cited in* Obj. at 14.

Notably, the government does not address vindictive *enforcement* at all, which challenges the investigative phase of the case and has nothing to do with prosecutors. The government also ignores the stage of these proceedings: this is a discovery dispute, not a motion to dismiss. In

9

ordering limited discovery, Judge Dein did not err, let alone clearly err, in finding "some evidence" of vindictiveness by actors at all stages here – CBP, DHS, HSI, and the USAO, as discussed below.

### 2.    The government minimizes and ignores the facts.

The government maligns Judge Dein's factual findings as "speculative," but it ignores and minimizes the substantial evidence of retaliatory animus. *See* Obj. at 16-18.

First, HSI headquarters initiated the criminal investigation. Judge Dein found:

> The government moved to dismiss Ms. Petrova's habeas petition and complaint, and on April 22, 2025, the habeas court set a hearing date for May 14, 2025. Motion at 4. As of that date, no criminal charges had been brought against Ms. Petrova relating to her attempt to bring the frog embryos into the country. Rather, it was not until May 2, 2025, after the hearing was scheduled, that [HSI] national headquarters made a referral to HSI in Massachusetts to initiate a criminal investigation of Ms. Petrova. At this juncture it appears that it was unusual for the investigation to have been initiated by headquarters, but that will be the subject of discovery.

Order at 4 (citing D.E. 45-4 at 37).

Second, the timing of the charges and DHS's argument that the charges mooted the habeas petition are evidence "that the criminal prosecution was initiated in response to Ms. Petrova's habeas petition, and to avoid the inquiry raised by the habeas petition." Order at 10. At the May 14, 2025 hearing, the habeas court rejected the government's argument that its institution of regular removal proceedings mooted the case. *See* D. Vt. D.E. 64 at 27, 42 (Hr'g Tr.). The habeas court also rejected the argument that Ms. Petrova was required to litigate the case in Louisiana. *See id.* at 41. The habeas court noted that CBP's cancellation of the visa was likely unlawful. *See id.* at 40 ("Her visa was [] revoked . . . for a customs violation.. . . . And then I go to the regulation and I don't see any authority, and I look at the provision that you have cited. I don't see any authority for revoking it"). The court scheduled a bail hearing for two weeks from that date. *See id.* at 41. Thus, the government needed another argument to sink the habeas petition.

Within *hours* of the hearing, the government unsealed the criminal charges and transferred Ms. Petrova to the custody of the U.S. Marshals. It then filed a brief in the habeas case, arguing

"*her petition is moot because she was arrested on May 14, 2025, for smuggling in violation of 18 U.S.C. § 545*" and attaching a copy of the criminal complaint. D. Vt. D.E. 63 at 5 (May 25, 2025) (emphasis added); *see also id.* at 6 ("Ms, Petrova is not in the immediate custody of any of the defendants named in her original habeas petition"). The timing and the mootness arguments suggest "the criminal proceedings were brought to avoid a resolution of the issues raised by Ms. Petrova's habeas petition, and not due to the seriousness of her actions at the airport." Order at 11.

Third, the charges are ill-fitting, which suggests the government decided to prosecute and then searched for a crime. To date, the government has not been able to specify a legal definition of "biological materials," let alone whether or why these inert samples would qualify as such, any more than shoe leather would—the "lie" it accuses Ms. Petrova of having made to CBP in Count 1. *See* Order at 6 (citing 6/18/25 Hr'g Tr. at 40, 47, 70, 74). The HSI case agent was unable to explain or define "biological materials," or distinguish the paraffin-fixed embryos from "shoe leather," *see id*. at 40, or explain why or how the samples comprised "merchandise which should have been invoiced" under the smuggling statute. After the probable cause hearing, rather than brief these issues, the government indicted Ms. Petrova, adding new false statements charges, effectively "ensur[ing] that Ms. Petrova faces criminal penalties even if her conduct does not, as the defendant argued, support the smuggling charge." Order at 7. The government has never produced anything describing the basis for its allegation that these samples comprise "biological materials." *See* D.E. 45 at 18-19. A former U.S. Customs attorney explained why they are not. *See* D. Vt. D.E. 72-1 at 5-6 (explaining the samples are *not* "biological" material, as that term is defined by the U.S. Department of Agriculture, which "regulates the imported material").

Fourth, the government offered to abandon the criminal case if Ms. Petrova agreed to withdraw her request for immigration relief and leave the United States. *See* Order at 7.

Fifth, these events take place in the context of the Trump Administration's explicit *policy* to retaliate against Harvard by preventing it from sponsoring its international students and

researchers. *Cf. United States v. Carey,* 816 F. Supp. 3d 129, 144 (D.D.C. 2026) (allowing inquiry into vindictive prosecution where the defendant cited "an executive order that singles out people who engage in disfavored speech and tells prosecutors to find crimes to charge them with, as well as statements by officers that suggest this order may have influenced the Government's choices," even though the defendant was caught on video committing the charged offense).[2]

Sixth, Ms. Petrova's ordeal garnered much media attention, which was tracked by HSI and the U.S. Attorney, herself. *See* D.E. 45-3 at 8-9 (HSI Report describing "much media attention to Petrova's immigration detention," including the "Opinion article authored by Petrova in the New York Times"). The Administration—namely, DHS—responded by attacking the media, lumping Ms. Petrova's case together with that of Kilmar Abrego Garcia, and others, just two days before it ordered the investigation of Ms. Petrova. *See* Exs. D, E.

Seventh, the U.S. Attorney herself joined in the chorus, lashing out at Ms. Petrova and the *New York Times* for publishing her Op/Ed. Ex. B. Her video Statement on X, shortly after unsealing the charges and the day after Ms. Petrova's *Times* Op/Ed, is strong evidence of vindictive and selective animus *by the USAO*. The U.S. Attorney singles out Ms. Petrova for her "educat[ion]" and "pedigree," making "clear that Ms. Petrova's status as a Harvard researcher played a significant part in the manner in which her case was handled, and that the government was cognizant of, and sensitive to, the publicity surrounding her decision." Order at 5-6. The U.S. Attorney appears to "approv[e] of the revocation of Ms. Petrova's visa by customs officials," Order at 5, even though the revocation was unlawful. ("The U.S. visa that Ms. Petrova was given – which was revoked by customs officials, as a result of her conduct – is a privilege, not a right."). And the attack on Ms. Petrova's Op/Ed as "lies" comprises "direct evidence of an expressed hostility or

---

[2] The government dismissed the charges, rather than produce discovery. *See* https://www.nbcnews.com/politics/justice-department/drops-case-veteran-carey-arrestedburning-american-flag-white-house-rcna263438 .

threat to the defendant for having exercised a constitutional right." *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982); *see* Ex. B ("It is unfortunate that the [] Times allowed her alleged lies to be perpetuated with Ms. Petrova's guest essay, another instance of the media not allowing the facts to get in the way of a good story").[3]

The Statement also makes the false assertion—not included in the charges—that Ms. Petrova's research samples threatened public safety. *See* Ex. B ("Ms. Petrova's . . . disregard for the health and safety of others ha[s] resulted in her arrest today on criminal charges."). As the habeas court wrote, after hearing the scientific evidence, "the samples she brought into the United States are wholly nonhazardous, nontoxic, nonliving, and posed a threat to no one." D. Vt. May 28 Tr. (D.E. 11-2) at 57 (emphasis added); *see also* D. Vt. D.E. 72-3 (letter from Nobel Laureate Martin Chalfie stating, "[t]he embryos were non-living, embedded in paraffin, and incapable of growing or transmitting disease"). Contrary to the undisputed scientific *fact* that the embryos were inert and posed no danger, the U.S. Attorney made a "false statement . . . in the face of evidence plainly and directly contradicting it." *Guevara Peruano v. Wesling et al.,* No. 26-cv-10300 (D. Mass. May 20, 2026), D.E. 43 at 21.

Simply put, the U.S. Attorney's Statement amounts to an "actual confession" of retaliatory animus against Ms. Petrova. *Andrews*, 633 F.2d at 453; *see also United States v. Johnson,* 171 F.3d 139, 140 (2d Cir. 1999) ("direct evidence" of vindictiveness can include "a statement by the prosecutor"); *United States v. Velsicol Chem. Corp.*, 498 F. Supp. 1255, 1266 (D.D.C. 1980) (finding actual vindictiveness and dismissing indictments where the U.S. Attorney "clearly expressed his intent and motivation" for bringing charges). The Statement jettisons the "fundamental premise of our society that the state wields its formidable criminal enforcement powers in a rigorously disinterested fashion." *Young v. United States ex rel. Vuitton.,* 481 U.S.

---

[3] *Cf.* Wemple, E., "Trump's Media-Bashing Is Coming Back to Bite Him in Court," *N.Y. Times* (Apr. 2, 2026), https://www.nytimes.com/2026/04/02/business/media/trump-media-courts.html

787, 810 (1987); *see also Ganger v. Peyton*, 379 F.2d 709, 713-14 (4th Cir. 1967) (finding a criminal prosecution cannot be constitutionally valid when the "prosecuting attorney's own self-interest" or conflicting obligation to a third party precludes him or her from "exercis[ing] fair-minded judgment" as a prosecutor). At bare minimum, the Statement shows the U.S. Attorney is not "an impartial prosecutor." *Jones v. Richards*, 776 F.2d 1244, 1247 (4th Cir. 1985); *see United States v. Comey*, No. 25-cr-272-MSN-WEF (E.D. Va.), D.E 120 at 7 (Amicus brief of former DOJ officials citing the "principle that prosecutions [must] always be based on 'law and merit, and not on considerations of party affiliation, political image-making, or White House approval or influence'") (citation omitted).

## II.    THE MAGISTRATE JUDGE CORRECTLY FOUND SUFFICIENT EVIDENCE OF SELECTIVE ENFORCEMENT AND PROSECUTION TO WARRANT DISCOVERY.

### A.    Relevant law

An unconstitutionally selective enforcement or prosecution occurs when a decision to investigate or prosecute is based on "an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles*, 368 U.S. 488, 456 (1962); *see Armstrong v. United States*, 517 U.S. 456, 464-65 (1996) (when "the administration of a criminal law is 'directed so exclusively against a particular class of persons,'" such a "system of prosecution amounts to 'a practical denial' of equal protection") (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886)). To prevail in proving selective enforcement or prosecution, a defendant must show discriminatory intent by the law enforcement agency or prosecutor and discriminatory impact. *See United States v. Washington*, 869 F.3d 193, 214 (3d Cir. 2017); *United States v. Tuitt,* 68 F. Supp. 2d 4, 10 (D. Mass. 1999). To warrant dismissal of an indictment, a claim of selective *prosecution* must be proven by clear evidence. In contrast, "selective *enforcement* claims must be proven only by a preponderance of the evidence." *Yu*, 161 F.4th at 45 (emphasis added) (reasoning that "law enforcement officers are subject to greater judicial scrutiny" than prosecutors); *see also United*

*States v. Mumphrey*, 193 F. Supp. 3d 1040, 1055 (N.D. Cal. 2016) (discussing selective enforcement standard and remedies).

*Discovery* in support of a selective prosecution claim is warranted if the defense comes forward with "some evidence tending to show the existence of the essential elements" of the claim (*i.e.*, discriminatory intent and discriminatory effect). *Armstrong,* 517 U.S. at 468; *accord United States v. Schmucker,* 815 F.2d 413, 418 (6th Cir. 1987). Discovery in support of a selective *enforcement* claim likely requires even less. The First Circuit has not ruled directly on the issue but cited favorably at least one decision endorsing a lower standard. *See Yu,* 161 F.4th at 44-45. Several circuits have found, at least in the "stash house sting" context, that "some evidence" of *either* discriminatory intent *or* discriminatory effect is sufficient to warrant discovery. *See United States v. Sellers*, 906 F.3d 848, 855 (9th Cir. 2018) (discussing *Washington,* 869 F.3d at 219-21 and *United States v. Davis*, 793 F.3d 712, 720 (7th Cir. 2015) (en banc)). Thus, "a defendant need not proffer evidence that similarly-situated individuals of a different race were not investigated or arrested to receive discovery on his selective enforcement claim." *Sellers*, 906 F.3d at 855.

**B.    The Magistrate Judge did not err, let alone clearly err, in finding "some evidence" of unconstitutional selectivity.**

As a threshold matter, the question before the Court is not whether this investigation and prosecution "*could*" have been "initiated for legitimate reasons," Obj. at 3, but whether it *would* have been initiated, absent the unconstitutional animus. *See Carey*, 816 F. Supp. 3d at 144 ("Carey must offer some evidence tending to show that he would not have been prosecuted but for his protected speech."). Magistrate Judge Dein correctly applied that standard. *See* Order at 10 ("the evidence before this Court . . . is that Ms. Petrova's actions at Logan would not normally have resulted in felony criminal charges").

Although Ms. Petrova is only required to show "some evidence" on either prong in order to obtain discovery in support of selective enforcement, *see Sellers*, 906 F.3d at 855, she makes a

sufficient showing on both prongs, as the Magistrate Judge Dein correctly found. *See* Order at 12-14. The government's main complaint is that Magistrate Judge Dein did not draw the comparator group narrowly enough when she found discriminatory effect. *See* Obj. at 7-8 ("Petrova is not criminally charged for a mere failure to declare a generic item. She is charged with fraudulently and knowingly bringing biological samples into the United States and lying to a CBP officer when confronted about the samples."). But here the government assumes the very facts that it must prove: that these samples are "biological" in the first place, and that Ms. Petrova "knew" the samples were "biological," such that her answer to the question whether she was bringing "biological material" was a "lie." Count 2, D.E. 19 at 3.

A comparison to other people who failed to declare items to CBP at the airport is apt and all that is needed at this stage. *See* Order at 14. Anyone who is reading this Memorandum has likely failed to declare an item they have brought into the United States, whether mistakenly or willfully, yet not been charged criminally. *See* 19 C.F.R. § 148.11. ("All articles brought into the United States by any individual must be declared to a CBP officer at the port of first arrival"), as charged in Count 1. Every time a person brings a T-shirt, or an "Eiffel tower magnet," or a "scorpion encased in plastic" into the United States without the declaring the "item," to CBP the traveler may have committed the federal crime of smuggling, according to the government. *See* D.E. 45-4 (June 18, 2025 Hr'g Tr.) at 49 (discussing "Eiffel Tower magnet" example); D. Vt. D.E. 64 at 7 (May 14, 2025 Hr'g Tr.) (habeas court questioning "whether or not this is in fact a biological specimen," or whether it was more akin to "a scorpion encased in plastic" that a person might bring home from a visit to Mexico).

The only "legitimate prosecutorial factors" that are even arguably relevant are the nature of the samples and the text messages about customs. *United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008); *see* Obj. at 7-8. But the samples are no more biological than shoe leather, or a scorpion encased in plastic, so adding the "biological" nature of the item to the mix does not greatly shrink

the pool of comparators. And even factoring in Ms. Petrova's text messages, how many people are not sure whether they can bring home fruits or cured meats from abroad and trade messages with family or friends before trying it? Even those cases are not typically prosecuted, and Ms. Petrova's inert samples had an even more ambiguous status. *See* D. Vt. D.E. 72-1 at 4-5 ("Never in my career as legal counsel for the U.S. Customs Service or as a customs attorney have I seen CBP pursue smuggling charges for failure to declare a research sample, or a similar item, *whether the failure to declare was willful or not.*") (emphasis added).

That the items were not prohibited, were not "biological" material at all, and that CBP did not call HSI and did not process Ms. Petrova for failure to declare them, are all evidence that *CBP itself* did not see this as a criminal issue. *See* Order at 6, 14, 16; D.Vt. D.E. 72-2 (Declaration of Licensed U.S. Customs Broker stating the research samples are not prohibited and do not require a permit);  D. Vt. D.E. 72-1 at 5 (" Never in my 35-year career as legal counsel for the U.S. Customs Service and as a customs attorney have I seen a situation, in which someone is not even processed for a 'failure to declare' violation, and then charged with smuggling in connection with the same incident three months later"). Whether the comparator group takes into account the once-biological nature of the items and/or the alleged text message evidence of willfulness, Ms. Petrova has still shown "some evidence" of discriminatory effect. *See also* D.E. 45 at 12-13 (reviewing habeas court's comments to that effect).

With regard to the discriminatory *intent* prong, Ms. Petrova makes more than a *prima facie* showing. First, the Statement of the U.S. Attorney makes "clear that Ms. Petrova's status as a Harvard researcher played a significant part in the manner in which her case was handled." Order at 5. The Trump Administration's retaliatory attacks against Harvard, international students, and J-1 visa-holders at Harvard in particular, as addressed in three separate lawsuits in this District, supply further evidence of strong animus against international students and researchers at Harvard, *as a matter of the official policy of the Executive branch*. The intervention of HSI headquarters in

17

initiating the criminal investigation is further evidence of a link between the Administration's animus against these groups and the decision to criminally investigate Ms. Petrova, as are the letter from Congress and DHS's "100 Days of Fighting Fake New" campaign, featuring Ms. Petrova's case. *See* Exs. C, D, E. And the U.S. Attorney's Statement amplifies that animus and connects it to the prosecution. Ex. B.

### C.    The Court should afford the government no presumption of regularity.

The legal standard for selective prosecution relies on a presumption of regularity. *See Yu*, 161 F.4th at 42 ("this burden reflects the presumption of regularity that prosecutors are afforded"); *cf. id.* at 45 (noting this reasoning does not apply to claims targeting the *enforcement* phase).

Yet we are in unprecedented times, and courts across the country have recognized that, "[i]n just six months, the President of the United States may have forfeited the right to . . . [t]rust that had been earned over generations." *Fed. Educ. Assoc. et al. v. Trump*, No. 25-cv-013620-PLF, D.E. 35 (D.D.C. Aug.14, 2025) at 25 (cleaned up); *see id.* at 21-25 (collecting *five pages* of case citations so finding). Judge Burroughs explicitly found no presumption of regularity due, in enjoining the proclamation against international students and visa holders at Harvard, to "conduct that is so unusual and therefore irregular on its face." *Harvard v. DHS,* No. 25-cv-11472-ADB, D.E. 75 at 34. DOJ is a defendant in that case. *See also United States v. Oregon*, No. 6:25-cv-01666-MTK (D. Or. Feb. 5, 2026), D.E. 73 at 22 ("The presumption of regularity that has been previously extended to Plaintiff that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds"); *Singh v. Tsoukaris*, No. 26-cv-01531-CPO (D.N.J. Feb. 20, 2026), D.E. 10 at 2 ("the presumption of regularity and integrity previously and routinely afforded to the Executive branch and the United States Attorney's Office has been undeniably eroded in this jurisdiction and across the country"); *Cartagena v. Soto*, No. 3:26-cv-01455-ZNQ (D.N.J. Feb. 26, 2026), D.E. 9 at 6 ("Sadly, the well-deserved credibility once attached to th[e] distinguished [U.S. Attorney's] Office is now a presumption that 'has

18

been undeniably eroded.'"); *In re: Search of One Device*, No. 25-sw-82-ZMF (D.D.C. May 9, 2025) at 8-9 n.10[4] ("Blind deference to the government? That is no longer a thing. Trust that had been earned over generations has been lost in weeks. . . . These norms being broken must have consequences."). As Judge Xinis told government counsel in *Abrego Garcia*, "You have taken the presumption of regularity and you've destroyed it in my view."[5] *See generally* "The 'Presumption of Regularity' in Trump Administration Litigation (4th edition)," *Just Security* (updated Mar. 19, 2026) (cataloguing decisions finding misconduct by the Administration).[6]

For all of these reasons, there is more than "some evidence" of unconstitutionally selective investigation against prosecution against Ms. Petrova—by DHS, HSI, *and* the USAO.

## III.    THE PRODUCTION OF THE INSTRUCTIONS TO THE GRAND JURY ON THE SMUGGLING CHARGE IS WARRANTED.

Although grand jury witness testimony is generally protected from disclosure under Fed. R. Crim. P. 6, the prosecution's *instructions* to the grand jury are different, and should be disclosed without any showing of particularized need. *See, e.g.*, *United States v. Alter,* 482 F.2d 1016, 1028 n.20 (9th Cir. 1973) ("[P]roceedings before the grand jury are secret, [] the ground rules by which the grand jury conducts those proceedings are not."). As Judge Burroughs explained,

> [T]he Court sees no reason why the prosecutors' instructions to the grand jury should be kept secret. What a prosecutor says to the grand jurors before asking them to return an indictment does not compromise the interests sought to be protected by grand jury secrecy. Further, allowing the instructions to be disclosed through the discovery process would help ensure the integrity of the grand jury process, incentivize prosecutors to be careful in instructing a grand jury, and give some teeth to the grand jury's "shield" function.

---

[4] https://www.dcd.uscourts.gov/sites/dcd/files/ECF%20Doc%20No.%2010.pdf.

[5] https://storage.courtlistener.com/recap/gov.uscourts.mdd.578815/gov.uscourts.mdd.578815.235.0.pdf#page=11.

[6] https://www.justsecurity.org/120547/presumption-regularity-trump-administration-litigation/.

*United States v. Facteau*, No. 1:15-cr-10076-ADB, 2016 U.S. Dist. LEXIS 111595, at *15 (D. Mass. Aug. 22, 2016); *accord United States v. Gurry*, No. 16-cr-10343-ADB, 2019 U.S. Dist. LEXIS 8212, at *7 & n.1 (D. Mass. Jan. 17, 2019); *United States v. Fuentes*, 2008 U.S. Dist. LEXIS 50425, at *10 (E.D. Cal. June 24, 2008) ("defendants are entitled to the transcript of the instructions and charges to the grand jury [without a showing of particularized need]"); *United States v. Belton*, No. 14-cr-00030-JST, 2015 U.S. Dist. LEXIS 52426, at *8-*9 (N.D. Cal. Apr. 21, 2015); *In re Grand Jury Proceedings*, 813 F. Supp. 1451, 1469-70 (D. Colo. 1993) (releasing grand jury instructions as a ministerial record).

Even if, as Judge Dein assumed, a showing of particularized need is required, Ms. Petrova makes that showing. *See* Order at 16. The government argues that CBP's failure to process Ms. Petrova for failing to declare the samples should be overlooked *because CBP (illegally) cancelled her visa instead*. Obj. at 4. That CBP failed to follow its own procedures because it chose instead to undertake at separate course of illegal conduct hardly helps the government here. The government's argument about a drafting error in the complaint affidavit, Obj. at 5, is another red herring: the fact that the HSI Agent was unable to define "biological materials," or "merchandise," is equally relevant to the case now as it was then. And the charges are equally ill-fitting. A Grand Juror asked exculpatory questions, which the AUSA would not allow the witness, Mr. Trim, to answer. *See* D.E. 45 at 20-21. The agent could not define "merchandise," which is also in the now-correctly cited smuggling statute. And the case is replete with the kinds of irregularities that are the hallmarks of an improper prosecution in search of a crime.

## CONCLUSION

For these reasons, the Court should affirm Magistrate Judge Dein's discovery order.

20

Respectfully submitted,

**KSENIIA PETROVA**

By her attorneys,

*/s/ Amy Barsky*
Amy Barsky, Esq. (BBO # 601111)
William W. Fick, Esq. (BBO# 650562)
Daniel N. Marx, Esq. (BBO# 674523)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
WFICK@FICKMARX.COM
DMARX@FICKMARX.COM
ABARSKY@FICKMARX.COM

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 1, 2026.

*/s/ Amy Barsky*

21